## **EXHIBIT C**

DOCS_DE:238920.1 05233/003

# APPENDIX E

# SECURITY AGREEMENT

The undersigned, J. DILLMAN, INC., ("Debtor") hereby grants to AVF FRANCHISING, LLC, a Michigan limited liability company located at 6500 E. 14 Mile Road, Warren, Michigan 48092 (the "Secured Party") a security interest in the collateral as hereinafter described and agrees as follows:

1.  **Grant of Security Interest.** Debtor grants to Secured Party a continuing security interest in all of the assets of Debtor and all of the other following described property in which Debtor now or hereafter acquires an interest in whatever form, and in any and all proceeds thereof: the Franchise Agreement between Debtor as franchisee and Secured Party as franchisor of even date herewith and all rights related thereto, inventory, equipment, fixtures, accounts, deposit accounts, goods, documents, letter-of-credit rights, chattel paper, instruments and general intangibles used in connection with Debtor's AVF Franchise business located at 4701 Wheeling Avenue, Muncie, Indiana 47304 (collectively the "Collateral").

2.  **Perfection of Security Interest.** Debtor hereby authorizes Secured Party to file financing statements and any renewals thereof describing the Collateral for purposes of perfecting the security interest granted in the Collateral to Secured Party hereunder. Debtor shall make appropriate entries on its books and records disclosing Secured Party's security interests in the collateral.

3.  **Indebtedness Secured.** The foregoing security interest is given to secure payment and performance of all obligations and indebtedness of Debtor now or later owing to Secured Party, under this Security Agreement, the Franchise Agreement and all Promissory Notes executed by Debtor in favor of Secured Party on the even date hereof ("Note(s)") and any other agreements that have been or are in the future signed by Debtor, and all extensions or renewals of the indebtedness and obligations. This security interest secures all indebtedness and obligations now or later owing to Secured Party by Debtor, regardless of whether any such indebtedness or obligation is: (a) not presently intended or contemplated by Debtor or Secured Party; (b) indirect, contingent, or secondary; (c) unrelated to the Collateral or to any financing of the Collateral by Secured Party; or (d) now or later evidenced by a promissory note or other document that does not refer to this security interest or this agreement.

The indebtedness and obligations that are secured by this security interest are collectively called the "Indebtedness."

4.  **Warranties, Representations and Agreements** Debtor warrants and represents to, and agrees with, Secured Party as follows: Debtor is a limited liability company entity, which is organized and validly existing under the laws of the State of Indiana. Debtor has full power and authority to enter into and perform its obligations under this Security Agreement and the person executing this Security Agreement is authorized to bind Debtor hereunder.

5.  **Agreements of Debtor.** Debtor hereby agrees to the following:

a. Debtor will not cause or permit any lien, security interest or encumbrance to be placed on any Collateral, except in favor of Secured Party and as may be approved by Secured Party.

b. Debtor will maintain all records concerning the Collateral at Debtor's place of business.

c. Debtor will furnish Secured Party with the information regarding the Collateral that Secured Party shall from time to time request and will allow Secured Party at any reasonable time to inspect the Collateral and Debtor's records regarding the Collateral.

d. Debtor will indemnify Secured Party with respect to all losses, damages, liabilities, and expenses (including attorney fees) incurred by Secured Party by reason of any failure of Debtor to comply with any of Debtor's obligations under this Security Agreement or by reason of any warranty or representation made by Debtor to Secured Party in this Security Agreement being false in any material respect.

6. **Secured Party's Right to Perform.** If Debtor fails to perform any obligation of Debtor under this Security Agreement within thirty (30) days or such other reasonable time period after written demand is made by Secured Party, Secured Party may, without giving further notice to or obtaining the consent of Debtor, perform that obligation on behalf of Debtor. Debtor will reimburse Secured Party on demand for any expense that Secured Party incurs in performing any such obligation and will pay to Secured Party interest on it, from the date the expense was incurred by Secured Party, at the highest rate to which Debtor could lawfully agree in writing. Secured Party is not required to perform an obligation that Debtor has failed to perform. If Secured Party does so, that will not be a waiver of Secured Party's right to declare the Indebtedness immediately due and payable by reason of Debtor's failure to perform.

7. **Events of Default and Acceleration.** Any part or all of the Indebtedness shall, at the option of Secured Party, become immediately due and payable without notice or demand upon the occurrence of any of the following events of default:

a. If default occurs in the payment or performance of any of the Indebtedness, when and as it shall be due and payable, including the application of all applicable cure periods.

b. If default occurs in the performance of any obligation of Debtor to Secured Party under this Security Agreement, Franchise Agreement, Note(s) or other agreement that now or later secures or relates to any indebtedness or obligation now or later owing by Debtor to Secured Party or that secures or relates to any guaranty of any such indebtedness or obligation ("Security Documents").

  c. If any warranty, representation or statement made by Debtor to Secured Party regarding all or part of the Indebtedness in this Security Agreement or in any of the Security Documents was false in any material respect when made or furnished.

  d. If Debtor dissolves, becomes insolvent, or makes an assignment for the benefit of creditors.

  e. If any guaranty that now or later secures payment or performance of all or any part of the Indebtedness is terminated or limited for any reason, without the written consent or agreement of Secured Party.

  f. If any attachment, garnishment, levy, execution or other legal process is at any time issued against or placed upon the Collateral.

  g. If a voluntary or involuntary case in bankruptcy, receivership or insolvency is at any time commenced by or against Debtor, or if any attachment, garnishment, levy, execution, or other legal process is at any time issued against or placed upon any Collateral, then the entire Indebtedness shall automatically become immediately due and payable, without notice or demand. All or part of the Indebtedness also may become, or may be declared to be, immediately due and payable under the terms of any of the Security Documents.

  8. **Secured Party's Rights and Remedies.** Secured Party shall have all rights and remedies of a secured party under applicable laws.

  9. **Expenses.** Debtor shall reimburse Secured Party on demand for all reasonable attorney fees, legal expenses and other expenses that Secured Party incurs in protecting and enforcing its rights under this Security Agreement.

  10. **Amendments and Waivers.** No provision of this Security Agreement may be modified or waived except by a written agreement signed by Secured Party. Secured Party will continue to have all of its rights under this Security Agreement even if it does not fully and promptly exercise them on all occasions. Secured Party is not required to sue upon or otherwise enforce payment of the Indebtedness or any other security before exercising its rights under this Security Agreement.

  11. **Notices.** Any notice to Debtor or to Secured Party shall be deemed to be given if and when mailed, with postage prepaid, to the respective registered office or last known address of Debtor or Secured Party, or if and when delivered personally.

  12. **Applicable Law.** This Security Agreement shall be governed by and interpreted in accordance with the laws of the State of Michigan.

3

3310691.v2

13. **Binding Effect.** This Security Agreement shall be binding upon and inure to the benefit of Debtor and Secured Party and their respective successors, and assigns.

**IN WITNESS WHEREOF**, the Debtor has caused this Security Agreement to be executed on this 19th day of August, 2016.

**DEBTOR:**

J. DILLMAN, INC.
an Indiana Corporation

By: _____

Its: _____OWNER_____

## FOR THE STATE OF INDIANA

This Addendum to the Franchise Agreement is agreed to this 19th day of August, 2016, by and between AVF Franchising, LLC and J. Dillman, INC.

1. In recognition of the requirements of the Indiana Deceptive Franchise Practices Law, 1C 23-2.2.7 and the Indiana Franchise Disclosure Law, 1C 23-2-2-2.5, the Franchise Agreement for AVF Franchising, LLC is amended as follows:

- Section 3.2 and 13.2 provide for a prospective general release of claims against Franchisor that may be subject to the Indiana Deceptive Franchise Practices Law or the Indiana Franchise Disclosure Law.
- Section 14 is amended to prohibit unlawful unilateral termination of a Franchise unless there is a material violation of the Franchise Agreement and termination is not in bad faith.
- Section 12 is amended subject to Indiana Code 23-2-2.7-1(9) to provide that post-term non-competitor covenants shall have a geographical limitation of the territory granted to Franchisee.
- Section 8.13 is amended to provide that Franchisee will not be required to indemnify Franchisor for any liability imposed upon Franchisor as a result of Franchisee's reliance upon or use of procedures or products which were required by Franchisor, if such procedures or products were utilized by Franchisee in the manner required by Franchisor.
- Section 16.5 is amended to provide that, in the event of a conflict of law, the Indiana Franchise Disclosure Law, 1C 23-2-2.5, and the Indiana Deceptive Franchise Practices Law will prevail.
- Section 16.3 is amended to provide that Franchisee may commence litigation in Indiana for any cause of action under Indiana law.
- Section 16.3 is amended to provide that arbitration between Franchisor and Franchisee, shall be conducted at a mutually agreed upon location.

2. Each provision of this Addendum shall be effective only to the extent that the jurisdictional requirements of the Indiana Law applicable to the provisions are met independently of this Addendum. To the extent this Addendum shall be deemed to be inconsistent with any terms or conditions of said Franchise Agreement or exhibits or attachments thereto, the terms of this Addendum shall govern.

IN WITNESS WHEREFORE, each of the undersigned acknowledges having read this Addendum, and understands and consents to be bound by all of its terms.

| AVF Franchising, LLC | Franchisee: J. Dillman, INC. |
|---|---|
| By: _____ | By: _____ |
| Title: _____ | Title: Owner |

3310691.v2

2